## ORVISS *v.* DUNN.

*(Circuit Court, N. D. Texas.* April 13, 1888.)

TRUSTS—ACTION TO ESTABLISH—LOST INSTRUMENTS—SUFFICIENCY OF EVIDENCE.
In a suit brought in 1884 to establish and enforce a bond to reconvey, alleged to have been given in 1847 by defendant to his uncle J., under whom plaintiff claimed, one witness testified that he saw certain papers executed about that time, and understood them to be deeds of J.'s land to defendant, given to enable defendant to sell it in the States whither he was returning after a visit to J., and a bond to reconvey in case defendant failed to sell. Another testified that from talks with defendant at that time he understood that such an arrangement had been made, and that he afterwards saw such a bond to reconvey produced and proved in a suit in 1854; that the witnesses to the bond were dead. It appeared that in 1847 defendant was poor, and the consideration he alleged was very small—less than one-ninth of that expressed in the deed. Plaintiff and his grantor had been in continuous possession and paid taxes since 1850. *Held,* that plaintiff was entitled to relief.

In Equity.

Bill to establish a bond for title, and for specific performance, by David A. Orviss against John Dunn.

*R. G. Street* and *A. C. Prendergast,* for complainant.

*Clark, Dyer & Bolinger,* for defendant.

McCORMICK, J. On the 30th day of January, 1884, the defendant in this suit, a citizen of the state of Mississippi, brought his action of trespass to try title (ejectment) against complainant to recover possession of, and establish his title to, a certain half league of land in Robertson county, Tex., described in his petition therein, and in the bill herein. On the 6th day of December, 1884, the complainant filed his bill herein, setting up substantially that on and prior to the 1st day of February, 1847, the land in controversy was owned by one James Dunn, an uncle of the John Dunn party hereto, and that on said 1st day of February, 1847, said James Dunn had conveyed said land to said John Dunn by deed absolute upon its face, reciting a cash consideration of $3,000 in hand paid, and acknowledged to have been received from said John Dunn by said James Dunn; that in truth and fact no consideration was paid or contemplated to be paid; that the purpose of said deed was to put the legal title to said land in said John Dunn, to enable him with facility to sell the same for his uncle in Mississippi, or one of the older states; and that simultaneously with the execution and delivery of said deed there was executed by John Dunn and delivered to said James Dunn an obligation to reconvey, unless sale was effected; that, pursuant to this purpose, the deed to John Dunn was recorded, and the bond or obligation to reconvey was withheld from record; that, no sale being effected by John Dunn, the said James Dunn, on the 9th day of September, 1850, conveyed this land, (in distribution of his estate) to his son, James Dunn, Jr.; that said bond for title has been lost or mislaid, and cannot now be found; that complainant holds the title of the said James Dunn, Jr., and that he and those under whom he claims have continuously

since the 9th of September, 1850, (and the said James Dunn before that time had) exercised acts of ownership over said land notoriously, and have paid taxes thereon, etc. And prays that said bond for title be established, and specific performance thereof be decreed, deed to John Dunn canceled, cloud removed, etc. The defendant denies that the execution and delivery to him of the deed of 1st February, 1847, was without consideration, or was subject to any trust in favor of the grantor, or that he ever executed and delivered a bond for title, or obligation to reconvey the land in controversy. He says that he gave a valuable consideration for this land, stating in his answer the consideration to have been $325, of which $75 was in money and the remainder an account against Dr. W. S. Rodgers; that he paid the taxes on it for several years; that, as he resided in Mississippi, he left his brother, A. M. Dunn, who resided in the county in Texas where this land is situated, as his agent, to pay the taxes thereon, and furnished his said brother the money necessary to pay the same; that the deed to said James Dunn, Jr., was not put to record until in 1872; that no possession was held of said land until after the sale to complainant of an interest in said land in 1873; that he never acquiesced in the adverse claim of those under whom complainant claims, nor had he any means of ascertaining that they or any of them set up any claim to said land, until the deed to James Dunn, Jr., was recorded in 1872; that at or about the time he purchased this land from his uncle, he and his uncle agreed to engage in merchandising in Robertson county, if the defendant could get the goods for this half league and for another half league owned by his uncle, and that, to carry out said agreement, his uncle did convey to him said other half league that he might sell it and his own,—the one in controversy,—and procure a partnership stock of goods; that he failed to effect said purpose, and afterwards reconveyed said other half league to the heirs of his uncle, said James Dunn. This answer is sworn to and sustained substantially by the deposition of the defendant taken in the case with a slight variance as to the consideration paid.

The complainant offers the testimony of one McFall, who says he was at James Dunn's house in 1847, engaged at work there for one Gilbreath; that he was present in the house one day, a short time before John Dunn left for Mississippi, and saw said Gilbreath and one Perry witness some papers that had been signed by James Dunn and John Dunn; that there were three or more papers; that he understood from the conversation of John Dunn and James Dunn and Perry (who was a lawyer) in presence of each other, of witness, and of Gilbreath, that James Dunn was deeding or had deeded two tracts, half leagues, of land in Robertson county (by the papers being witnessed) to John Dunn, to sell for James Dunn in the states on commission, and that John Dunn had given a bond to reconvey the lands in case he could not effect a sale. The complainant also offers the testimony of one Wheelock, who has lived in Robertson county since 1833, lived within three miles of James Dunn's house until said James Dunn died, and knew John Dunn all the time he was in Robertson county,—from October, 1846, until he went away, some time

in 1847. This witness says: "My understanding was, by talks with John Dunn, that his uncle had conveyed him lands to sell and he was to get a certain percentage." He says it was the family talk with the Dunn and Wheelock families. He was elected sheriff in 1851 of Robertson county, and was present in court at the May term, 1854, of the district court of Robertson county, and remembers a suit of James Dunn, Jr., against John Dunn, to make title to lands upon a bond for title. He caused citation by publication to be made on said John Dunn. The trial was had, and witness saw what purported to be a title-bond from John Dunn to James Dunn, Sr., to make title to the half league involved in this suit,—the Robertson one-half league; saw the bond exhibited before the jury in the trial of the cause of *James Dunn, Jr.*, vs. *John Dunn.* His impression is that Gilbreath was a witness to the bond, and that they had Judge KILLOUGH present, to prove Gibreath's signature, because Gilbreath was dead. This witness knew both Gilbreath and Perry, and says they are both dead. (There was judgment in favor of James Dunn, Jr., in this suit, in 1854, in Robertson county, and it was pleaded in complainant's bill, but was stricken out on demurrer, because the record disclosed only service by publication on the defendant, who was a citizen of another state.) The original deed from James Dunn, Sr., to John Dunn was produced by complainants as coming from his possession. These witnesses show that in 1847 John Dunn was a young man 24 or 25 years old, without means, and without any remunerative occupation, of good presence and good qualities, in whom his uncle had confidence, and who spent a year at his uncle's house, as a young relative visiting him from a distant state (that was before the railroad had qualified distances in Texas) would; and, as occasion called, attending to any matter for his uncle that came in his way. The other proof relates to the loss of or inability to find the bond for title, to the family history or tradition in respect to this land transaction, and the constant claim of ownership and payment of taxes. The consideration recited in the deed may well be taken as the parties' estimate of the value of the land at that time. This is $3,000, or about $1.35 per acre. The defendant says he gave an account against Dr. W. S. Rodgers for $250, and released two sums his uncle owed him,—one for $25, and one for $40, making $315 in all, or not quite 15 cents per acre. None of the witnesses mention ever hearing of the project to convert the lands into goods, and carry on a partnership mercantile venture. All the circumstances of John Dunn's visit to Texas and remaining with his uncle, (who was a rich man, for that time and place,) and his leaving there to return to the older states, seem to me to tend strongly to support complainant's case, and to corroborate the direct testimony of the witness McFall and the witness Wheelock, whose testimony I have summarized above. It is well settled that to ingraft a trust upon a deed by parol, or to establish a lost writing by parol which declares such a trust, the proof must be clear, and the unsupported testimony of one witness, however positive and clear, cannot safely be allowed to establish such a trust. It is, however, as well settled that, where the proof is adequate, the trust must

be upheld, and that both the nature and amount of the proof required must depend in a measure upon the age of the transaction. Upon a careful consideration of the whole proof, I am constrained to conclude that the deed from James Dunn, Sr., to John Dunn for the land in controversy was made for the purpose of enabling said John Dunn to sell said land for James Dunn, Sr., and that the legal title thereby held by said John Dunn was and is for the use and benefit of said James Dunn, Sr., whose right complainant now holds; and that a decree should be passed herein granting complainant the relief prayed for in his bill; and it will be so ordered.